UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRYAN DiFRANCESCO as father and
natural guardian of the infant minor, LD,

                              Plaintiffs,

                             v.

WIN-SUM SKI CORP.,
HOLIDAY VALLEY, INC.,

                              Defendants.

**Hon. Hugh B. Scott**

13CV148

CONSENT

**Order**

---

       Before the Court are plaintiffs' motion for a protective Order pursuant to Federal Rule of Civil Procedure 26(c) and to quash subpoenas (Docket No. 43; see id., Pls. Atty. Decl. Ex. G). Responses initially were due by January 13, 2017, and was argued with the Final Pretrial Conference on January 18, 2017, and deemed submitted (Docket No. 44). The parties then consented to proceed before the undersigned as Magistrate Judge including conducting a trial (Docket No. 37). The jury selection and trial of this case was scheduled for February 1, 2017 (Docket No. 40, Final Pretrial Order), but was later adjourned (Docket Nos. 63, 64). Responses to this motion then were due by February 3, 2017 (Docket No. 63), which defendants submitted (Docket No. 65), and reply by February 10, 2017 (Docket No. 63), which plaintiffs submitted (Docket No. 68), and argument was held on February 16, 2017 (Docket Nos. 63, 69 (minutes)).

       Separately, this Court will address the parties' respective motions in limine (Docket Nos. 53, 58 (defendants' motions), 56 (plaintiffs' motions).

BACKGROUND

This is a diversity personal injury action.  Plaintiffs are Canadians, with plaintiff LD (hereinafter "LD," cf. Fed. R. Civ. P. 5.2) a five-year-old who skied at defendants' ski resort, Holiday Valley, in 2010, and her father, Bryan DiFrancesco.  Plaintiffs allege that LD was injured falling from a chairlift at Holiday Valley (Docket No. 1, Compl.; see Docket No. 43, Pls. Atty. Decl. ¶ 3, Ex. B).  Defendants are New York corporations who operate Holiday Valley.

According to plaintiffs' motion, LD was participating in a ski lesson at Holiday Valley on February 15, 2010, under the supervision of a ski instructor when she fell from the chairlift. Plaintiffs allege negligent instruction and supervision during the course of that lesson resulting in LD's fall.  (Docket No. 43, Pls. Atty. Decl. ¶ 3; see id., Pls. Memo. at 1-2.)  According to plaintiffs' moving papers, LD sustained injuries to her left leg and left hip due to the fall (Docket No. 43, Pls. Atty. Decl. ¶ 9, Ex. E).

The Scheduling Order (after extensions, see Docket Nos. 14-15, 20, 23, 25, 27) in this case had discovery conclude on April 30, 2015 (Docket No. 27; see Docket No. 43, Pls. Atty. Decl. Ex. D).  No motions to compel were filed and the parties reported on October 5, 2015, readiness for trial (Docket No. 30).

Defendants served two subpoenas duces tecum that plaintiffs seek quashed and a protective Order against them (Docket No. 43, Pls. Atty. Decl. ¶ 2, Exs. A, G).  One subpoena (id., Ex. A) sought information from plaintiff father Bryan DiFrancesco (hereinafter "Bryan" or "father") regarding LD's recreational activities, including but not limited to skiing or snowboarding, her athletic activities; the other subpoena was intended for Holimont, Inc., for documents surrounding LD's skiing activities and any skiing or snowboarding accidents at

Holimont (id., Ex. A).  These subpoenas had a return date of January 3, 2014 (id.).  Plaintiffs

objected to these subpoenas, raising their objections through their counsel's emails to defense

counsel (id. ¶ 2, Ex. F; see Docket No. 68, Pls. Reply Memo. at 8-9).

Plaintiffs argue, next, that these are not trial subpoenas but are more in the nature of

untimely discovery requests (since the discovery deadline has long passed) (Docket No. 43, Pls.

Atty. Decl. ¶ 5).  The subpoena for Bryan is directed at LD's activities after the February 2010

accident, which he testified to in his deposition on February 18, 2014 (id. ¶ 5, Ex. C, EBT Tr.

Feb. 18, 2014, at 10-21, 23, 95-96).  There, Bryan testified that LD participates in various sports

in school and after school following the accident, including playing soccer, volleyball,

basketball, running cross-country, skiing, and snowboarding (id., Ex. C, EBT Tr. at 10-11, 15,

16, 95).  He said that LD skied and snowboarded with the family at Holimont (id., Ex. C, EBT

Tr. at 16-21).  Plaintiffs complain that the subpoena for Bryan was served upon plaintiffs'

counsel and plaintiffs (as Canadians) did not consent to service of subpoenas through counsel

(id. ¶ 7; id., Pls. Memo. at 8); service was done by email to counsel's email address (Docket

No. 43, Pls. Memo. at 3; see Docket No. 68, Pls. Reply Memo. at 8-9).

Plaintiffs object to the subpoena directed at Holimont since it is directed at plaintiff LD's

post-2010 accident activities at a different ski resort, as well as her accident at Holimont on

January 2015 wherein she injured her clavicle (Docket No. 43, Pls. Atty. Decl. ¶¶ 6, 8, 10).

They argue that the 2015 Holimont incident is irrelevant to her 2010 claims and could introduce

prejudicial material leading a jury to conclude that LD is accident prone or habitually negligent

and somehow at fault in 2010 (id. ¶ 12).  The Holimont records involve her clavicle, a body part

plaintiff does not claim was injured in 2010 and is irrelevant to this case (id. ¶ 13).  As a non-

party subpoena, it essentially seeks discovery from Holimont after the April 2015 discovery deadline has passed (id. ¶ 14).

Plaintiffs contend that materials from Holimont would be inadmissible under Federal Rules of Evidence 402 and 404(b) since they lead to irrelevant and inadmissible other wrongs or acts of LD (Docket No. 43, Pls. Memo. at 5-6). They also argue that New York State physician-patient privilege does not permit discovery of LD's physical condition for injuries to parts of her body unrelated to the 2010 injuries to her leg and hip (id. at 7).

Defendants respond that the documents sought are part of their First Request for Production of Documents as supplemental responses to those requests (Docket No. 65, Defs. Memo. at 11-12), see Gorzynski v. Jet Blue Airways Corp., No. 03CV774, 2012 U.S. Dist. LEXIS 28932, at *8, 11 (W.D.N.Y. Mar. 5, 2012) (Scott, Mag. J.). Paragraph 16 of that request sought all documents of LD's organized athletic activities after the 2010 accident (Docket No. 65, Defs. Atty. Decl. ¶ 5, Ex. A, at 3, ¶ 16) and plaintiffs responded that they did not have any responsive documents (id., ¶ 5, Ex. B, at 5, ¶ 16). LD later testified that she participated in organized soccer and basketball, and defendants found an article in the Ellicottville Times that listed LD as a member of a Holimont freestyle ski team and participated in mogul competitions (id.¶ 6, Ex. C (Times article)). During oral argument, defendants state that the Times article was found by an Internet search.

Defendants also sought photographs and videos of LD skiing (id. ¶ 8, Ex. A, ¶ 17) and plaintiffs responded that they would "search for photographs or videos" of LD skiing and offering to "supplement this response" (id., ¶ 8, Ex. B, ¶ 17). Plaintiffs, however, initially had not supplemented this response although LD has skied and snowboarded since the 2010 accident

(id. ¶ 9).  They contend that the documents sought are relevant to plaintiffs' claims of pain and suffering and loss of enjoyment of life (Docket No. 65, Defs. Memo. at 11).  Plaintiffs' reply contained photographs of LD skiing, but of an unstated date (Docket No. 68, Pls. Atty. Decl. Ex. A).  As for the 2015 Holimont accident documents, defendants contend that New York State law regarding whether there is a blanket waiver of the physician-patient privilege by commencing a personal injury action is in conflict and that this Court should not rely upon Fourth Department decisions on this issue (Docket No. 65, Defs. Memo. at 12).  The 2015 incident may reveal LD's loss of enjoyment of life and related psychological injuries (id. at 13). Alternatively, defendants argue that the 2015 incident report should be submitted for in camera review to determine the materiality of the record (id. at 13-14).  As for objections to admitting post-accident incident, defendants find it "curious" that plaintiffs take this position although plaintiffs seek admission of prior and subsequent accidents at Holiday Valley; concluding that plaintiffs "cannot have it 'both ways'" (id. at 14).  Plaintiffs claim that LD suffers from post-traumatic stress and anxiety from the 2010 accident (see id. at 12), defendants argue that evidence from the 2015 incident is relevant to establishing whether that post-traumatic stress and anxiety arose from the 2010 or 2015 incidents (id. at 14).

Plaintiffs reply that they are not seeking to "have it both ways," rather they contend that the broken clavicle is unrelated to LD's present claims while defendants' relocation of the instruction signs at the chairlift was to be used by plaintiffs only for impeachment, or in response to the affirmative defense of culpable conduct or to show feasibility (Docket No. 68, Pls. Reply Memo. at 7-8).  They also contend that, if this case were tried in New York State courts, Fourth Department law regarding waiver of physician-patient privilege (rather than Second Department

law) would apply and therefore this Court should apply Fourth Department law (and the non-waiver of the privilege) to uphold the Holimont subpoena (<u>id.</u> at 6-7).

During oral argument of February 16, 2017, plaintiffs emphasize that defendants are seeking discovery in these subpoenas after the discovery cutoff deadline (<u>see</u> Docket No. 69). Defendants received photographs (Docket No. 68, Pls. Atty. Decl. Ex. A), which did not state when the photographs were taken; if taken prior to plaintiffs' depositions, defendants now argue that these photographs should have been produced and, if so, defendants would have questioned plaintiffs about the provenance of these photographs. The parties also sought supplementation of discovery (photographs from both sides, future medical care report from LD's treating sources) and indicated that they may need to file further motions in limine depending upon the items produced in this mutual supplementation. Defendants responded that they seek information about LD's 2015 clavicle injury to distinguish those injuries from any claimed from the 2010 accident at issue here.

During this argument, the parties and Court agreed to reschedule jury selection and trial to begin on **Monday, July 17, 2017** (Docket No. 69).

DISCUSSION

I.      Applicable Standards

Under Rule 26(c), prior to obtaining a protective Order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the

6

requesting party and the protectable interests of the party from whom discovery is sought.

Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005).  This Court has broad discretion in

issuing such a protective Order.  Seattle Times, supra, 467 U.S. at 36.

Under Rule 16, a Scheduling Order "may be modified only for good cause and with the

judge's consent," Fed. R. Civ. P. 16(b)(4).

A subpoena should state the specific time and place for compliance, Fed. R. Civ.

P. 45(a)(1)(A)(iii).  A subpoena is served by delivery of a copy to the named person, id.,

R. 45(b)(1), but usually not upon a party in the action, Hasbro, Inc. v. Serafino, 168 F.R.D. 99,

100 (D. Mass. 1996) (Neiman, Mag. J.).  Service of the subpoena in a foreign country is

governed by statute, 28 U.S.C. § 1783(a) (service of United States national or resident in a

foreign country); see Fed. R. Civ. P. 45(b)(3); see also Air Turbine Tech., Inc. v. Atlas Copco

AB, 217 F.R.D. 545, 546 (S.D. Fla. 2003) (court held could not compel defendants to produce

foreign national employees who were beyond the subpoena power of the court); see also

Grodinsky v. Fairchild Indus., Inc., 507 F. Supp. 1245, 1250 (D. Md. 1981) (for forum non

conveniens analysis, parties could not compel Canadian witnesses to appear in District of

Maryland and could not use subpoena power to obtain Canadian documents in air crash

occurring in Canada with other Canadian connections); Gillars v. United States, 182 F.2d 962,

978 (D.C. Cir. 1950) (for criminal subpoena under Federal Rules of Criminal Procedure 17(b),

aliens who inhabit a foreign country cannot be compelled to respond to a subpoena, quoting

United States v. Best, 76 F. Supp. 138, 139 (D. Mass. 1948)); United States v. Taveras, 436 F.

Supp. 2d 493, 509 (E.D.N.Y. 2006) ("the federal district court's power of subpoena does not

extend to non-citizens beyond the nation's borders").

7

A person commanded to produce documents pursuant to a subpoena may serve written objections, Fed. R. Civ. P. 45(d)(2)(B), and upon a timely motion, this Court "must quash or modify a subpoena that" subjects a person to undue burden, id. R. 45(d)(3)(A)(iv); see In re Application of Apollo Advisors, L.P., No. M8-85, MDL No. 863, 1993 U.S. Dist. LEXIS 7927, at *5 (S.D.N.Y. June 4, 1993).  As noted by Judge Leisure in Application of Apollo Advisors, supra, 1993 U.S. Dist. LEXIS 7927, at *6, although Rule 45 does not address relevancy objections to the matters sought, "Rule 45 must be viewed in conjunction with the scope of discovery permissible under Rule 26," id., with the discovery sought must be relevant to this case and admissible in the action, id.  Ordinarily, a party does not have standing to move to quash a third-party's subpoena, but this Court has discretion to deny the subpoena when the Court finds "that there is no reason why the subpoena could not have been brought during the discovery period," Revander v. Denman, No. 00 Civ. 1810, 2004 U.S. Dist. LEXIS 628, at *4 (S.D.N.Y. Jan. 21, 2004) (citing McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 587 (W.D.N.Y. 1995) (Heckman, Mag. J.)).

"Any subpoena that is issued to non-parties pursuant to Rule 45 is 'subject to Rule 26(b)(1)'s overriding relevance requirement,'" Ireh v. Nassau Univ. Med. Ctr., No. CV 06-09, 2008 U.S. Dist. LEXIS 76583, at *13 (E.D.N.Y. Sept. 17, 2008) (Tomlinson, Mag. J.) (quoting During v. City Univ. of N.Y., No. 05 Civ. 6992, 2006 U.S. Dist. LEXIS 53684, (S.D.N.Y. Aug. 1, 2006)).

II.      Application; Subpoenas

A.      Date and Service

Plaintiffs raise two procedural objections to these subpoenas.  First, they were dated for January 2014 return dates (Docket No. 43, Pls. Memo. at 2-3; Docket No. 43, Pls. Atty. Decl. Ex. F) presumably for a trial scheduled to commence on February 1, 2017 (cf. Docket No. 64 (order adjourning reset trial date); Docket No. 63).  Defendants did not address this error, but the subpoenas probably were dated in error (perhaps reflecting the earlier discovery period).  If allowed, defendants would serve amended subpoenas with updated return dates.

Second, the subpoena upon plaintiff Bryan DiFrancesco was served by email through his counsel absent a stipulation by his counsel to accept service of a subpoena for a foreign national (Docket No. 43, Pls. Memo. at 2-3; Docket No. 43, Pls. Atty. Decl. ¶ 7, Ex. F).  Defendants also do not address this contention.  Plaintiffs are Canadians who originally commenced this action in this Court.  Again, if service is allowed for these subpoenas and absent stipulation by plaintiffs, defendants would have to serve plaintiff Bryan DiFrancesco as any Canadian witness would be served.

Furthermore, a subpoena of plaintiff Bryan DiFrancesco may be the wrong means to obtain materials from him.  As a party, production of documents and other materials is obtained under Rule 34, Hasbro, Inc., supra, 168 F.R.D. at 100.  The jurisdictional and process concerns of serving a subpoena (a document required to obtain jurisdiction, albeit limited, over a person) over a non-citizen residing in a foreign country are obviated when that person consented to proceed in this country as a plaintiff in this Court.  Defendants may serve a document demand from plaintiffs under Rule 34, see Fed. R. Civ. P. 5(b)(1) (service of other papers, including

discovery demands, upon a represented party by serving their attorney).  Therefore and absent a stipulation, defendants could serve a discovery demand upon plaintiffs (through their counsel) to obtain the materials now sought in this subpoena.

This Court next turns to the merits objections to the subpoenas, including the timing of the subpoenas relative to the Scheduling Order.

B.       Bryan DiFrancesco Subpoena

Plaintiffs next object to Bryan's subpoena because it seeks information disclosed in his deposition about LD's post-2010 accident activities as of the date of his 2014 deposition.  They argue that the subpoena seeks irrelevant materials given the claims arising from the 2010 accident (Docket No. 43, Pls. Memo. at 2-4).

Defendants here are seeking discovery for the February 2014 (after Bryan's deposition) to April 2015 activities of LD without seeking leave to reopen discovery.  The Scheduling Order (without further amendment since December 30, 2014, Docket No. 27) had discovery conclude by April 30, 2015 (id.).  Neither side sought a further extension of that deadline or, until now, moved to compel discovery.

As defendants note (Docket No. 65, Defs. Memo. at 11; id., Defs. Atty. Decl. ¶¶ 7, 9), plaintiffs have an obligation to supplement their discovery.  Rule 26(e)(1) requires a party to supplement its discovery or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," Fed. R. Civ. P. 26(e)(1)(A), or upon this Court's Order, Fed. R. Civ. P. 26(e)(1)(B).  The duty to supplement continues even after the discovery

period has closed.  Gorzynski, supra, 2012 U.S. Dist. LEXIS 28932, at *8; Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc., 272 F.R.D. 350, 358 (W.D.N.Y. 2011) (Payson, Mag. J.) (duty to supplement continues even after close of discovery, citing cases); but cf. 6-26 Moore's Federal Practice—Civil § 26-131[3] & n.28 (2016) (while the duty to supplement is a continuing one, it should occur "during the discovery period with special promptness as the trial date approaches," citing Fed. R. Civ. P. 26(e) advisory comm. note (1993)).

Plaintiffs alleged permanent injuries to LD (e.g., Docket No. 1, Compl. ¶ 17) and defendants questioned Bryan in his deposition about LD's activities and he testified to her skiing and snowboarding after the 2010 accident.  Defendants seek documentation of those activities (documents, as well as photographs and videotapes; the latter items plaintiffs offered to supplement but failed to do so) (Docket No. 65, Defs. Atty. Decl. ¶¶ 5, 7, 8-9, Ex. A, Defs. First Request for Production of Documents, Nos. 16, 17).  Plaintiffs' document discovery responses deny having documents regarding LD's organized athletics after the accident and offered to search for (and presumably produce if found) photographs and videotapes of her activities (id. ¶¶ 5, 8, Ex. B, Pls. Response to First Request for Production of Documents, Nos. 16, 17).  Enrollment in organized sports (even at the modified school level) requires a level of documentation.  The question is whether plaintiffs have in their possession, custody, or control such documents.  Plaintiffs did produce in their reply certain photographs of LD skiing (Docket No. 68, Pls. Atty. Reply Decl., Ex. A), but these are undated and leave questions about when they were taken.  Thus, the **obligation to supplement is present here**.  Defendants' subpoena to produce these documents **is granted** and plaintiffs' motion (Docket No. 43) to quash is **denied**;

for a cleaner procedure, defendants are to serve a second request for production of documents seeking the materials sought in this subpoena.

      C.      Holimont Subpoena

            1.      Physician-Patient Privilege and Standing to Quash

Plaintiffs also seek to quash the subpoena directed at Holimont Inc. Ordinarily, a party like plaintiffs does not have standing to move to quash a third-party's subpoena unless the party has some personal privacy right or privilege to the documents sought, McNerney, supra, 164 F.R.D. at 587. Plaintiffs claim that LD's medical records would be disclosed from Holimont (Docket No. 43, Pls. Memo. at 7, citing Fed. R. Evid. 501 and New York physician-patient privilege), hence granting them standing to object to the subpoena upon the third party ski resort. They also claim that the Holimont materials would lead to irrelevant items given the 2010 accident (id. at 5). Defendants suggest that New York privilege law is in conflict and that the Fourth Department precedent relied upon should not be here (Docket No. 65, Defs. Memo. at 12), but only citing Second Department case law for the proposition that the plaintiff waives the physician-patient privilege if she places her entire medical condition in controversy, Avila v. 106 Corona Realty Corp., 300 A.D.2d 266, 267, 750 N.Y.S.2d 764, 765 (2d Dep't 2002); see Cynthia B. v. New Rochelle Hosp. Med. Ctr., 60 N.Y.2d 452, 456-57, 470 N.Y.S.2d 122, 124-25 (1983). Plaintiffs argue that Fourth Department law on the waiver of the physician-patient privilege should apply here since, if this case were tried in New York State courts, it would be tried in a county within that Department and that precedent would be applicable (Docket No. 68, Pls. Reply Memo. at 6-7). This, however, is not the applicable standard.

In a diversity action, this Court has to apply state law as construed by the highest court of the state (the New York State Court of Appeals) and not the local intermediate appellate courts (such as the New York State Supreme Court Appellate Divisions).  When the New York Court of Appeals has not ruled on the particular question, as here with the scope of waiver of the physician-patient privilege for parties who place their medical condition at issue, this Court has to predict the direction the Court of Appeals would go if given that issue, see Gasperini v. Center for Humanities, Inc., 66 F.3d 427, 430 (2d Cir. 1995), relying upon precedent from the lower state courts and determining which way the Court of Appeals would go, but cf. 2d Cir. R. 27.2 (certification of questions of state law by the United States Court of Appeals for the Second Circuit to the state's highest court).

Under New York law, the physician-patient privilege may be waived by the plaintiff provided that the plaintiff introduces evidence concerning privileged information, 58A N.Y. Jur. Evidence and Witnesses § 902 (2016).  "The waiver of the physician-patient privilege made by a party who affirmatively asserts a physical condition in its pleading does not permit discovery of information involving unrelated illnesses and treatments," 44 N.Y. Jur. Disclosure § 121, at n.22 (2016), citing Barnes v. Habuda, 118 A.D.3d 1443, 988 N.Y.S.2d 786 (4th Dep't 2014); Bozek v. Derkatz, 55 A.D. 3d 1311, 865 N.Y.S.2d 163 (4th Dep't 2008).  By bringing or defending a personal injury action

> "in which the mental or physical condition is affirmatively put in issue, a party waives the privilege.  As a practical matter, a plaintiff or a defendant, who affirmatively asserts a mental or physical condition, must eventually waive the privilege to prove his case or his defense.  To uphold the privilege would allow a party to use it as a sword rather than a shield,"

Koump v. Smith, 25 N.Y.2d 287, 294, 303 N.Y.S.2d 858, 864 (1969) (emphasis in original),

asserting a damages claim while at the same time asserting the privilege to prevent the opponent

from "ascertaining the truth of the claim and the nature and extent of the injury or condition," id.

at 294, 303 N.Y.S.2d at 864.  As noted by commentators, "thus, in a personal injury suit, the

plaintiff's waiver of the physician-patient privilege is limited in scope to those conditions

affirmatively placed in controversy, and he does not place his entire medical condition in

controversy by suing to recover damages for orthopedic injuries," 44 N.Y. Jur. Disclosure § 121

at n.23, citing Gumbs v. Flushing Town Center III, L.P., 114 A.D.3d 573, 981 N.Y.S.2d 394 (1st

Dep't 2014).  Note the Court of Appeals has yet to rule on the issue of the scope of a waiver of

this privilege, that is, whether bringing a litigant's medical condition into controversy acts as a

waiver.  One of the Court of Appeals cases cited by defendants (Docket No. 65, Defs. Memo. at

13) involved the medical facility seeking a protective order against disclosure despite the

litigating patient's waiver, Cynthia B. v. New Rochelle Hosp. Med. Ctr., 60 N.Y.2d 452, 454,

470 N.Y.S.2d 122, 123 (1983).  In Dillenbeck v. Hess, 73 N.Y.2d 278, 280, 539 N.Y.S.2d 707 ,

709 (1989), the other Court of Appeals decision cited by the defense (id.), the Court of Appeals

held that a party defending a personal injury action invoked the physician-patient privilege.  The

defendant there had not affirmatively placed their medical condition in issue, the Court of

Appeals held that the plaintiff "may not effect a waiver of the privilege merely by introducing

evidence demonstrating that the defendant's physical condition is genuine 'in controversy'

within the meaning of" CPLR 3121(a), the statute authorizing discovery of medical records,

Dillenbeck, supra, 60 N.Y.2d at 454, 470 N.Y.S.2d at 123; see Koump, supra, 25 N.Y.2d at 294,

303 N.Y.S.2d at 864.

Plaintiffs argue that the waiver of the privilege as to the injuries sustained in this accident would not permit wholesale discovery of LD's medical condition unrelated to this accident (Docket No. 43, Pls. Memo. at 7, citing Tirado v. Koritz, 77 A.D.3d 1368, 1369, 908 N.Y.S.2d 793 (4th Dep't 2010); see also Reading v. Fabiano, 126 A.D.3d 1523, 6 N.Y.S.3d 360 (4th Dep't 2015) (upholding in camera review of plaintiff's medical record and redacting irrelevant information to limit disclosure to conditions affirmatively placed in controversy); Tabone v. Lee, 59 A.D.3d 1021, 1022, 873 N.Y.S.2d 401, 403 (4th Dep't 2009) (allegation in bill of particulars of suffering loss of enjoyment of life, disability, disfigurement, among other allegations held not to constitute a "broad allegations of injury" that constitutes a waiver of privilege for all of plaintiff's medical record); Iseman v. Delmar Medical-Dental Building, Inc., 113 A.D.2d 276, 279, 495 N.Y.S.2d 747, 750 (3d Dep't 1985) (waiver of privilege is limited and does not permit wholesale discovery of information on party's physical or mental condition, not permitting discovery of unrelated illnesses and treatments); Gorman v. Goldman, 36 A.D.2d 767, 321 N.Y.S.2d 296, 297-98 (2d Dep't ) ("The bringing of the instant lawsuit in no way constituted a waiver by plaintiff of the privilege afforded as to information arising from totally unconnected illness and treatment").  Defendants respond that the Second Department would find that plaintiffs waived the privilege by bringing LD's condition into issue to cover all subsequent injuries and treatment (Docket No. 65, Defs. Memo. at 13, citing Cynthia B., supra, 60 N.Y.2d at 456-57, 470 N.Y.S.2d at 124-25; Avila, supra, 300 A.D.2d at 267, 750 N.Y.S.2d at 765; Dillenbeck, supra, 73 N.Y.2d 278, 539 N.Y.S.2d 707; St. Clare v. Cattani, 128 A.D.2d 766, 513 N.Y.S.2d 250 (2d Dep't 1987) (plaintiff alleged in bill of particulars and in her examination before trial sufficient facts to affirmatively place her mental condition in controversy in this

physical injury claim); <u>Daniele v. Long Is. Jewish-Hillside Med. Ctr.</u>, 74 A.D.2d 814, 425 N.Y.S.2d 363 (2d Dep't 1980) (same, in medical malpractice claim, plaintiff affirmatively placed mental condition in controversy to waive privilege).  Alternatively, because of plaintiffs' loss of enjoyment of life claims, LD's medical records after the 2010 accident should be inspected <u>in camera</u> (<u>id.</u> at 13-14, citing <u>Boyea v. Benz</u>, 96 A.D.3d 1558, 1560, 946 N.Y.S.2d 757, 759 (4th Dep't 2012)).

The issue thus is whether plaintiffs waived LD's privilege for an injury later in time and to a different part of LD's body by plaintiffs asserting LD suffering "permanency of injury and loss of enjoyment of life" (Docket No. 1, Compl. ¶ 17) as well as psychological injuries (<u>see</u> Docket No. 65, Defs. Memo. at 12, citing Docket No. 56, Pls. Motion in Limine, Ex. H, Pls. Response to Interrogatory No. 1) from the 2010 chairlift fall.  The cases cited above from the Appellate Divisions involve the litigant's contemporaneous condition and not, as here, the plaintiff's subsequent condition and treatment for an apparently unrelated injury.

Defendants' invoking of the waiver is akin to the practice rejected in <u>Dillenbeck</u>.  In that case, one of the plaintiffs was killed and the second seriously injured when struck by defendant, who also sought medical treatment but was not administered a blood alcohol test by the police, 73 N.Y.2d at 281-82, 539 N.Y.S.2d at 709.  "Alleging that defendant's hospital records contain evidence of her blood alcohol content at the time of the accident, plaintiffs moved, pursuant to CPLR 3121(a), to compel defendant to disclose any medical records relating to her physical condition on the date of the accident, including the results of any blood alcohol test administered to defendant upon her admission to the hospital," <u>id.</u> at 282, 539 N.Y.S.2d at 710, while defendant cross moved for a protective order against that disclosure, <u>id.</u> at 282-83, 539 N.Y.S.2d

at 710.  While deeming defendant's physical condition at the time of the accident as being in controversy, the Court of Appeals held that the defendant did not place her condition in controversy and waive the privilege merely by answering the Complaint, id. at 289, 539 N.Y.S.2d at 714.  The Court of Appeals then concluded that an opponent "may not effect a waiver of the privilege for the simple reason that the privilege is not theirs to waive but rather belongs to the patient," id. at 289, 539 N.Y.S.2d at 714 (citing Richardson, Evidence § 434 (Prince 10th ed.)).

The waiver of this privilege is for plaintiffs to waive.  They only waived as to injuries and treatment for the 2010 incident.  Predicting which way the Court of Appeals would decide this, this Court believes that the New York Court of Appeals would agree with the Fourth Department and hold that waiver of the physician-patient privilege is limited to the conditions affirmatively placed at issue and no other unrelated illnesses and treatments plaintiffs may have.  As a result, here LD did not waive the privilege as to her 2015 injury and treatment merely by alleging loss of enjoyment from her 2010 accident.  As a result, plaintiffs **possess standing to object to the subpoena to be served upon non-party Holimont**.

New York courts do recognize the option of this Court to conduct an in camera review of the sought medical records to determine if they involve medical conditions cited therein were affirmatively placed in controversy, Reading, supra, 126 A.D.3d at 1525, 6 N.Y.S.3d at 361; Boyea, supra, 96 A.D.3d at 1560, 946 N.Y.S.2d at 759.  During oral argument, defendants stated that they sought the 2015 incident and medical records to see if that incident had any impact on the claimed injuries arising from the 2010 accident.  They argued that plaintiffs claimed only that LD broke her left femur in 2010 but on or after 2015 added complaints about injuries to her hip.

17

Given the difference in time and parts of the body involved in the 2015 accident and the 2010 accident at issue here, this Court **orders review of plaintiff LD's 2015 medical records <u>in camera</u>** in order to minimize production of LD's medical records for conditions and treatments unrelated to those at issue from the 2010 incident.

As for plaintiffs' privilege argument (and the one ground for their standing to challenge a third-party subpoena), it is not even clear that Holimont would have medical records among its documents regarding skiing or snowboarding accidents involving LD or LD's skiing activities at that resort for plaintiffs to invoke the physician-patient privilege.  Neither party produced (either under seal or <u>in camera</u>) an example of Holimont accident records that show that it reveals an injured skier's medical records.  Probable Holimont's incident records would be their internal reports of incidents occurring on its slopes, which may reference the medical condition of LD (such as first aid administered, evaluations at the resort, and what follow up care was advised or taken).  If such documents exist from Holimont, those would be governed by the physician-patient privilege but other documents would not.

In another motion in limine in this case (Docket No. 53, Exs. G-S), defendants submitted under seal its incident reports from other skiers for accidents that occurred at Holiday Valley prior to and subsequent the accident at issue with LD.  They submitted these documents under seal because they contain private personal information of non-parties and "oftentimes private medical information" (Docket No. 45, Defs. Motion to Seal Documents ¶ 1).  Assuming that ski incident reporting is similar at Holimont as at Holiday Valley, the portions of such records that reveal medical information could be redacted before production.  A cursory review of the Holiday Valley incident reports produced for the other motion reveals disclosure of where an

18

injured skier was hurt but mostly focused on what had happened leading to the incidents reported (see Docket No. 53, Exs. G-S), with Holiday Valley's form having check boxes for "probable injury" and "injury zone" (where on the skier's body he or she was injured), and notation of the first aid rendered (if any) (id.).  Some reports include incident statements from medical first responders (e.g., Docket No. 53, Ex. J); such statements from Holimont would be excluded due to the physician-patient privilege.

As a result, plaintiffs would have standing only to object to the subset of medical documents that might be contained in Holimont's records.  Rule 45 gives this Court the flexibility to modify a subpoena, Fed. R. Civ. P. 45(d)(3)(iii); therefore, the subpoena to be served upon Holimont is **modified** to exclude any medical record or treatment record for LD in Holimont's records.  Such medical records are first to be delivered to this Court for review in camera to determine if they need to be produced to defendants.  Otherwise, plaintiffs' motion (Docket No. 43) for a protective Order and to quash the Holimont subpoena is **denied**.

2.     Timeliness of Subpoena and Discovery Deadline

This Court has discretion to deny the subpoena when the Court finds "that there is no reason why the subpoena could not have been brought during the discovery period," Revander, supra, 2004 U.S. Dist. LEXIS 628, at *4.  Plaintiffs may have a stronger argument against both subpoenas because they essentially seek disclosure after the discovery cutoff date with no effort by defendants to seek to extend the discovery deadline.  While parties are obliged to supplement their discovery when the party learns that the disclosure or response was incomplete or incorrect and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process," Fed. R. Civ. P. 26(e) (emphasis added), it is not clear

19

whether defendants sought discovery of plaintiff's post-accident skiing incidents to have supplemented responses.  Their request sought all documents related to organized athletic activities of LD after the 2010 accident (Docket No. 65, Defs. Atty. Decl. Ex. A, Defs. Request No. 16) without specifically seeking any accidents she may have had during those activities. Another request (id., Request No. 8) does seek authorizations to permit defendants to obtain copies of LD's "medical records relating to care and treatment of the injuries she claims to have sustained as a result of the incident."  LD's injuries from the 2015 incident may have some impact upon her 2010 injuries.  To clarify whether her 2010 condition worsened after the 2015 incident (an incident occurring at the end of the discovery period, cf. Docket No. 27), production of her medical records (in camera) for 2015 may be in order.  If, however, plaintiffs represent that the injuries suffered in 2010 were in no way affected by the 2015 incident, production may not be necessary.

Supplementation is not for production in a belated fashion, Reid v. Lockheed Martin Aero. Co., 205 F.R.D. 655, 662 (N.D. Ga. 2001).  Although plaintiffs alleged permanent injuries to LD (e.g., Docket No. 1, Compl. ¶ 17) and defendants questioned Bryan in his deposition about LD's activities and he testified to her skiing and snowboarding, it is not clear from the moving papers here that defendants sought plaintiffs to provide documentation of permanent injury (cf. Docket No. 65, Defs. Atty. Decl. Ex. A).  Thus, the supplementation obligation of Rule 26(e) only runs during the course of discovery, see Fed. R. Civ. P. 26(e)(1)(A) (supplement "in a timely manner"), (B) (or as ordered by this Court); 6-26 Moore's Federal Practice—Civil § 26-131[3] (2016); but cf. Star Direct Telecom, Inc., supra, 272 F.R.D. at 358 (duty to supplement continues even after close of discovery, citing cases), and the supplementation obligation

generally does not extend to disclosures made during deposition testimony, 6-26 <u>Moore's</u> <u>Federal Practice—Civil</u>, <u>supra</u>, § 26.131[1].  Here, LD's post-accident skiing was disclosed in Bryan's deposition testimony (Docket No. 43, Pls. Atty. Decl. Ex. C).  The discovery produced with this motion does not indicate that description of LD's activities or subsequent injuries were provided in means other than Bryan's deposition testimony.  But defendants did make a document request regarding LD's post-2010 athletic activities; this is a sufficient basis for plaintiffs to supplement their answer.

Defendants' subpoena to plaintiff Bryan DiFrancesco is **not quashed** and is modified (as stated above) to be a discovery response.  Defendants' subpoena upon third party Holimont also is **not quashed but the subpoena is modified as indicated above** and plaintiffs' motion for a protective Order against these subpoenas (Docket No. 43) is **denied**.  Both subpoenas are modified to have a return date prior to the trial and absent stipulation regarding service, the subpoena upon plaintiff Bryan DiFrancesco is to be converted into a party request for production of documents and served upon plaintiffs' counsel, Fed. R. Civ. P. 5(b)(1), 34.

III.    Scheduling

At oral argument on February 16, 2017, the trial date was reset to **July 17, 2017** (Docket No. 69).  During that argument, the parties referenced other supplementation that may be necessary that were not expressly part of this motion (or may have been referenced in pending motions in limine).  Given the disclosures called for in this Order (as well as representations of the parties of further supplementation of discovery), the following deadlines need to be set prior to trial:

Supplemental discovery shall conclude by **April 5, 2017**.

An Amended Final Pretrial Order (including a Final Pretrial Conference) will be separately entered following this limited discovery deadline.  The Conference scheduled for **Tuesday, April 11, 2017, at 2 pm** (Docket No. 63), is now an Interim Pretrial Conference.

CONCLUSION

For the reasons stated above, plaintiffs' motion (Docket No. 43) for a protective Order quashing subpoenas is **denied** and their motion (id.) to quash the two subpoenas is **denied in part** as discussed above.  Defendants' subpoena of Holimont is modified as indicated above and the return date of both subpoenas is amended to reflect a date prior to trial.  Defendants' subpoena of plaintiff Bryan DiFrancesco shall be amended to be a request for production of documents from plaintiffs.  Plaintiffs shall produce LD's 2015 medical records from the Holimont incident the subject of defendants' subpoena to this Court for in camera review.

The supplemental discovery called for in this Order (as well as discovery issues raised at oral argument) shall conclude on **April 5, 2017**.  The Pretrial Conference (Docket No. 63) is now an **Interim Pretrial Conference on Tuesday, April 11, 2017, 2 pm**.  This case is scheduled as ordered above, with jury selection and trial to begin on **Monday, July 17, 2017**.

So Ordered.

/s/ Hugh B. Scott
 Hon. Hugh B. Scott
 United States Magistrate Judge


Dated: Buffalo, New York
 February 22, 2017

22